06-21650

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CIV - JHU???

Case No. _____

Civil Division _____ MAUSDJ
MAGISTRATE JUDGE
SIMONTON

TARIQ A. JILANI,

      Plaintiff,

v.

**FPL GROUP, INC.**
A Florida corporation,

      Defendant.

_____/

## COMPLAINT of PLAINTIFF – TARIQ A. JILANI

    **TARIQ A. JILANI**, the Plaintiff in the above-styled cause, sues the Defendant,

**FPL GROUP, INC.**, and alleges as follows:

1.    Plaintiff, TARIQ A. JILANI (hereinafter, "Plaintiff Jilani"), brings this action

        pursuant to the provisions of 42 USC Sec. 1981, as Amended, for damages

        in excess of $1,000,000 to compensate him for economic loss and other

        damages caused by racial discrimination, racial harassment, and retaliatory

        action in the workplace, committed by Defendant, FPL GROUP, INC.,



(hereinafter, "Defendant FPL"), an employer, against Plaintiff Jilani, who is a member of a racial minority.

2. The jurisdiction of this court is invoked pursuant to the provisions of 28 USC Sec 1331 and 42 USC Sec. 1981, as Amended.

3. At all times relevant herein, Plaintiff Jilani was a citizen of the United States of America and a resident of Miami-Dade County, Florida.

4. At all times relevant herein, Defendant FPL was a corporation by virtue of the laws of the State of Florida with its main office located in Juno Beach, Florida, was authorized to do business in the state of Florida, and has continuously been conducting business in Miami-Dade County, Florida.

5. Plaintiff Jilani is a black, male, electrical engineer, who entered into an agreement with Defendant FPL on February 9, 2004 to work as a protection & control engineer at Defendant FPL, and worked as such until Defendant FPL suspended him from work without pay on December 9, 2005.  The suspension ended when Defendant FPL terminated Plaintiff Jilani from employment on December 27, 2005.

6. As a protection & control engineer, Plaintiff Jilani was hired as an Associate Engineer, and he remained in that position throughout his employment with Defendant FPL.

7. Plaintiff Jilani was assigned to work under Defendant FPL's protection & control engineering supervisor, Alberto Villareal, and Defendant FPL's protection & control engineering manager, Juan Quintana.

2

8.     Defendant FPL created and maintained a racially discriminatory hostile work environment by committing the following practices throughout Plaintiff Jilani's career at Defendant FPL:

9.     Defendant FPL placed Alberto Villareal in supervision of protection & control engineers without requiring him to attend the training program that all protection & control engineering supervisors are required to attend.

10.    Defendant FPL, through its manager, Juan Quintana, subjected Plaintiff Jilani to racial discrimination and ridicule on his first day of employment at Defendant FPL, by taking Plaintiff Jilani to Wendy's for hamburgers as a corporate welcome luncheon when he had taken Cuban new hires to fine restaurants.

11.    Plaintiff Jilani's protection & control engineering Cuban coworkers were embarrassed to learn that Defendant FPL, through its manager, Juan Quintana, had subjected Plaintiff Jilani to such ridicule due to race and exclaimed, "That's wrong!"

12.    On Plaintiff Jilani's first day of employment at Defendant FPL, Defendant FPL's supervisor, Alberto Villareal, subjected Plaintiff Jilani to racial discrimination and ridicule, challenging Plaintiff Jilani's expectation of equal treatment, by placing an equal opportunity employment flyer on Plaintiff Jilani's desk and waiting to see Plaintiff Jilani's reaction to such when he returned from his Wendy's corporate welcome luncheon.

13.   Defendant FPL subjected Plaintiff Jilani throughout his employment at
      Defendant FPL to a racially discriminatory hostile work environment by
      assigning Plaintiff Jilani to perform Defendant FPL work tasks at substations
      with control house walls covered with racial epithets such as "NIGGER",
      "COONS", etc. and such offensive racial discrimination known, ignored, and
      condoned by Defendant FPL.

14.   Within the first month of Plaintiff Jilani's employment with Defendant FPL,
      Defendant FPL's supervisor, Alberto Villareal, made racial slurs in Plaintiff
      Jilani's presence and indirectly called Plaintiff Jilani a "Nigger" by referring to
      certain Defendant FPL work tasks as "Nigger-work" and then hunching his
      shoulders, dropping his neck into his shoulders, smirking, putting his hand
      over his mouth, and saying, "Oops, sorry", implying that he was not
      supposed to say such in the presence of a "Nigger".

15.   Defendant FPL's supervisor, Alberto Villareal, believed that Defendant FPL
      deemed Whites to be superior to Cubans, and Cubans to be superior to
      Blacks, and Alberto Villareal reflected such belief by responding to Plaintiff
      Jilani's numerous complaints of unequal treatment in the workplace because
      of race with, "That's just the way it is!"

16.   Defendant FPL's supervisor, Alberto Villareal, believed that Defendant FPL
      deemed Whites to be superior to Cubans, and Cubans to be superior to
      Blacks, and Alberto Villareal reflected such belief in his supervision of

Plaintiff Jilani and white and Cuban protection & control engineers as described below.

17.   For most of Plaintiff Jilani's career, because of race, Defendant FPL assigned Plaintiff Jilani to work alone on entry level jobs and the least desirable jobs, these jobs being generally the jobs demanding the most strenuous and continuous physical exertion, and involving duties hazardous to health or physical safety, while Defendant FPL gave the white protection & control engineer junior coworker, during his career, six months of work doing computer imaging, light assignments of performing station assessments at a relaxed pace, and at least twelve months of assignments whereby he received training to perform more advanced engineering tasks directly from Defendant FPL's supervisor, Alberto Villareal.

18.   Because of race, Defendant FPL segregated white protection & control engineers from Plaintiff Jilani for more advanced training purposes and Defendant FPL trained the white protection & control engineers without Plaintiff Jilani getting the benefit of such training.

19.   Because of race, Defendant FPL required Plaintiff Jilani to adhere to FPL rules and regulations regarding job procedures and safety, but did not require the white junior engineer to adhere to the same rules and regulations and subjected Plaintiff Jilani to unnecessary risks to his safety, hindrances to his work performance, additional workloads, and undue frustration at Defendant FPL's workplace.

20.  Because of race, Defendant FPL required Plaintiff Jilani to respect the white junior engineer and take instruction from the white junior coworker, but did not require the white junior coworker to respect Plaintiff Jilani and take instruction from Plaintiff Jilani and subjected Plaintiff Jilani to constant aggravation when working with the white junior coworker and required Plaintiff Jilani to exercise enormous restraint, fortitude, and patience to avoid physical confrontations and the destruction of Defendant FPL structures, vehicles, and equipment.

21.  Because of race, Defendant FPL required Plaintiff Jilani to perform menial, but crucial for security and safety purposes, tasks of opening and closing substation gates, and did require the white junior coworker to open and close such gates when working with Plaintiff Jilani, resulting in Plaintiff Jilani having to always perform such menial tasks.

22.  Because of race, Defendant FPL gave work instructions directly to the white junior coworker, and called the white coworker on his cellular phone and had him instruct Plaintiff Jilani regarding Plaintiff Jilani's work assignments.

23.  Because of race, Defendant FPL responded to Plaintiff Jilani's complaints of the white junior coworker's disrespect for Plaintiff Jilani by ignoring the complaints and "high-fiving" and laughing with the white junior coworker in the sight of Plaintiff Jilani.

24. Because of race, Defendant FPL trained the white junior coworker to develop the white coworker's career at Defendant FPL and withheld training from Plaintiff Jilani to impede his career development at Defendant FPL.

25. Throughout Plaintiff Jilani's career with Defendant FPL, Defendant FPL's supervisor, Alberto Villareal, practiced racial harassment against Plaintiff Jilani by discriminating against Plaintiff Jilani in the manner described in Paragraphs 8-24 above, and in carrying out the following practices:

   A. Following Plaintiff Jilani's FPL assigned van around town bumper-to-bumper during work hours for no work related reason.

   B. Boasting to Plaintiff Jilani that he could get him fired at any time.

   C. Disparaging Plaintiff Jilani's name among his senior coworkers by telling them that Plaintiff Jilani was not working-out on the job.

   D. Reprimanding Plaintiff Jilani on false accusations of Plaintiff Jilani falling asleep while talking to other employees and playing a radio during work.

   E. Making unsuccessful challenges to Plaintiff Jilani regarding personal and work related issues.

   F. Calling Plaintiff Jilani during work hours while he was on task to inquire about his harassment, asking, "So, are you worried?"

   G. Showing Plaintiff Jilani resentment for disclosing certain maintenance shortfalls in Alberto Villareal's area of responsibility that Alberto Villareal said had been addressed.

H.  Preventing Plaintiff Jilani from receiving more advanced training from other protection & control engineers.

26.  Plaintiff Jilani complained continuously to Defendant FPL's supervisor, Alberto Villareal, of the unequal treatment and the harassment he received as compared to the treatment the white coworkers received in Defendant FPL's workplace, but was always given the response, "Hey, he's white, blue-eyed, and blonde!" or "That's just the way it is!"

27.  Because of race, during the fall of 2004, Defendant FPL, through its manager, Juan Quintana, refused twice to receive the paperwork from Plaintiff Jilani that would have enabled Plaintiff Jilani to be reimbursed for tuition for the master's degree program he attended at Florida International University, but received the paperwork for reimbursement from two Cuban protection & control engineers who attended the same program as Plaintiff Jilani.

28.  Because of race, during the fall of 2004, Defendant FPL, through its manager, Juan Quintana, impeded Plaintiff Jilani's chances to obtain a master's degree to enhance his career at Defendant FPL by refusing his request for reimbursement of tuition and furthered the career enhancement chances of the Cuban protection & control by receiving and furthering for processing their paperwork for reimbursement of tuition.

29.  Plaintiff Jilani believed that the unequal treatment would affect his ability to progress as a protection & control engineer.

8

30.    During June 2005, Plaintiff Jilani set up a meeting and met with Defendant FPL's manager, Juan Quintana, to complain of the racial harassment and racial discrimination as described in Paragraphs 8-29 above.

31.    In June 2005, after hearing that Plaintiff Jilani was complaining about Defendant FPL's racial harassment and racial discrimination, Defendant FPL, through its manager, Juan Quintana, in deliberate indifference to Plaintiff Jilani's federally protected rights, ended the meeting with "Don't worry about that shit", and forced Plaintiff Jilani to return to the racially discriminatory hostile work environment.

32.    In June 2005, Defendant FPL's manager, Juan Quintana, did not take corrective action regarding Plaintiff Jilani's complaints against the racial discrimination and racial harassment.

33.    In mitigation of damages, Plaintiff Jilani endured the racial discrimination and racial harassment as described above and continued to excel in his performance as a protection & control engineer.

34.    At Defendant FPL's workplace, promotions from the position of Associate Engineer to the position of Engineer II are based on individual performance.

35.    Plaintiff Jilani, as an Associate Engineer, exceeded the performance requirements in the work he was assigned as a protection & control engineer at Defendant FPL.

36.   By September 2005, Plaintiff Jilani's work performance level met that of an Engineer II protection & control engineer and qualified Plaintiff Jilani for a promotion to the position of Engineer II.

37.   After 19 months as an Associate Engineer, in September 2005 Plaintiff Jilani requested Defendant FPL's supervisor, Alberto Villareal, to initiate the process whereby Plaintiff Jilani would be promoted to Engineer II.

38.   Because of Plaintiff Jilani's complaint to Defendant FPL's manager, Juan Quintana, in June 2005 of Defendant FPL's racial discrimination and racial harassment against Plaintiff Jilani, Defendant FPL's supervisor, Alberto Villareal, wanting to harm Plaintiff Jilani, denied Plaintiff Jilani a promotion to Protection & Control Engineer II for which Plaintiff Jilani was qualified to receive.  Alberto Villareal used a requirement for promotion that Plaintiff Jilani acquire in-depth skill in the task, "trip-by-lock-out", as a pretext for the retaliation.

39.   Other protection & control engineers, whose comparable performances within comparable times Plaintiff Jilani either matched or surpassed, were promoted to Engineer II without having acquired such skill.

40.   Defendant FPL hired Plaintiff Jilani as an entry level protection & control engineer, Associate Engineer, at a starting pay of $48,500 per year and shortly afterwards hired a Cuban applicant as an Engineer II (previously titled Level 3 Engineer) with a starting pay of around $54,000.

41.   On his first day of work the Cuban engineer could not perform the task, "trip-by-lockout" at Defendant FPL's workplace, yet he was hired as Engineer II (previously titled Level 3 Engineer).

42.   After denying Plaintiff Jilani the promotion, Defendant FPL's supervisor, Alberto Villareal, furthered the racial harassment and retaliation because of Plaintiff Jilani's opposition to racial discrimination by maliciously withholding from Plaintiff training in the task, trip-by-lock-out.

43.   In mitigation of damages, Plaintiff Jilani endured the racial discrimination and racial harassment as described above and continued to excel in his performance as a protection & control engineer.

44.   Defendant FPL, through its supervisor, Alberto Villareal, continued the racial discrimination and racial harassment against Plaintiff Jilani by reprimanding Plaintiff Jilani for what he accused 'not willing to work with others', instead of reprimanding the white coworker for refusing to drive and forcing Plaintiff Jilani to chauffeur the white coworker twelve 16-hour workdays straight, and to incur swelling in his right foot.

45.   The approximately forty trip-by-lock-out tasks supervised by Defendant FPL's supervisor, Alberto Villareal, were performed during the fourth quarter of the year, 2005.

46.   November 28, 2005, Defendant FPL, through its supervisor, Alberto Villareal, continued to racially discriminate against and racially harass Plaintiff Jilani by announcing to Plaintiff Jilani that he, Alberto Villareal, was

"out of the 'trip-by-lock-out' business, and that if Plaintiff Jilani expected to be trained in 'trip-by-lock-out' he would have to be trained by the white junior coworker.

47. In the past, when Plaintiff Jilani asked the white junior coworker for specific information regarding the performance of Defendant FPL's engineering tasks, the white junior coworker would respond, "That's secret!"

48. Plaintiff Jilani became so disturbed by Defendant FPL's racial discrimination, racial harassment and its attempt to frustrate Plaintiff Jilani's receipt of a promotion that he set up a meeting and met with Defendant FPL's manager, Juan Quintana, at Airport substation on November 29, 2005 to report the continued racial harassment, racial discrimination, and Defendant FPL's supervisor, Alberto Villareal,'s refusal to initiate the necessary input required for Plaintiff Jilani's promotion in retaliation to Plaintiff Jilani's report of racism to Defendant FPL's manager, Juan Quintana in June 2005.

49. At the November 29, 2005 meeting, Plaintiff Jilani requested that Defendant FPL's manager, Juan Quintana, promote him to the Engineer II level.

50. At the November 29, 2005 meeting, Defendant FPL through its manager, Juan Quintana, rubber-stamped Defendant FPL's supervisor, Alberto Villareal,'s racially discriminatory action by immediately denying Plaintiff Jilani's request for a promotion and by also using a requirement for promotion that Plaintiff Jilani acquire in-depth skill in the task, "trip-by-lock-out", as a pretext for racial discrimination and retaliation.

51. On November 29, 2005, Defendant FPL, through its manager, Juan Quintana, denied Plaintiff Jilani's request for a promotion, and used an additional requirement for promotion that Plaintiff Jilani acquire in-depth skill in the task, "capacitor bank", as a pretext for racial discrimination and retaliation.

52. Other protection & control engineers, whose comparable performances within comparable times Plaintiff Jilani either matched or surpassed, were promoted to Engineer II without having acquired the skills to perform neither "trip-by-lock-out", nor "capacitor bank".

53. After hiring Plaintiff Jilani, Defendant FPL's manager, Juan Quintana, hired a Cuban engineer as an Engineer II (previously titled Level 3 Engineer) who on his first day of work could not perform neither the task, "trip-by-lockout" nor "capacitor bank" at Defendant FPL's workplace.

54. After Plaintiff Jilani's meeting on November 29, 2005 with Defendant FPL's manager, Juan Quintana, Defendant FPL's manager, Juan Quintana, feared for his job and attempted to weaken the seriousness of Plaintiff Jilani's complaint against racial discrimination and racial harassment by insulting and belittling Plaintiff Jilani, saying "I didn't know you called me over here to 'bitch' about Albert!"

55. During the November 29, 2005 meeting, Defendant FPL through its manager, Juan Quintana, denied Plaintiff Jilani's request to be transferred to an area free of Defendant FPL's supervisor, Alberto Villareal, and forced

13

Plaintiff Jilani to remain under the supervision of Alberto Villareal, where

Plaintiff Jilani's career with Defendant FPL would be ended.

56.   After the meeting on November 29, 2005 with Plaintiff Jilani, Defendant

FPL's manager, Juan Quintana met with Defendant FPL's supervisor,

Alberto Villareal, for about two hours on November 30, 2005.

57.   After the November 30, 2005 meeting between Defendant FPL's manager,

Juan Quintana, and Defendant FPL's supervisor, Alberto Villareal,

Defendant FPL started looking for an excuse to fire Plaintiff Jilani.

58.   Within a week after the November 29, 2005 meeting with Plaintiff Jilani

concerning racism in the workplace, Defendant FPL through its manager,

Juan Quintana, initiated with Defendant FPL's human resource manager,

Christopher Ryan, an investigation of Plaintiff Jilani's employment

application.

59.   On December 9, 2005, Defendant FPL responded to Plaintiff Jilani's

complaint of racial harassment, racial discrimination and retaliation by

suspending Plaintiff Jilani from work, stripping him of the Defendant FPL

van, computer, and other Defendant FPL assets, in the presence of

coworkers, and denying Plaintiff Jilani access to Defendant FPL grounds.

60.   The record of discipline that Defendant FPL used to terminate Plaintiff Jilani

from employment stated that Plaintiff Jilani was terminated for falsifying

employment records by failing to report an arrest on the employment

application.

61.   Defendant FPL's accusation that Plaintiff Jilani falsified his employment application was a pretext for suspending Plaintiff Jilani because he opposed racial discrimination and racial harassment in Defendant FPL's workplace.

62.   Regarding Plaintiff Jilani, the question on the employment application called for reporting arrests that ended in a conviction that was the result of a plea that resulted in a pre-trial intervention program.

63.   At the time Plaintiff Jilani submitted his employment application, and thereafter, Plaintiff Jilani had no convictions and did not attend a pretrial intervention program that was the result of a conviction or the result of any plea.

64.   On December 9, 2005 Plaintiff Jilani made Defendant FPL's manager, Juan Quintana, aware that he had not falsified his application for employment and charged that the suspension was a result of Plaintiff Jilani's complaint of racial discrimination, racial harassment and retaliation.

65.   On December 12, 2005 Plaintiff Jilani made Defendant FPL's human resources department and Defendant FPL's director over protection & control engineering aware that he had not falsified his application for employment and charged that the suspension was a result of Plaintiff Jilani's complaint of racial discrimination, racial harassment and retaliation.

66.   After Defendant FPL suspended Plaintiff Jilani without pay, Defendant FPL's supervisor, Alberto Villareal, boasted to Plaintiff Jilani's former coworker, "When you go over your supervisor's head, you better be clean!"

67.    With the knowledge that Plaintiff Jilani had not falsified his application for
       employment, and with the knowledge that that the suspension was a result
       of Plaintiff Jilani's complaint of racial discrimination,  racial harassment, and
       retaliation, Defendant FPL and its managers, directors and lawyers, had
       human resource manager, Christopher Ryan, and Defendant FPL's
       protection & control engineering manager, Juan Quintana, terminate Plaintiff
       Jilani's employment with Defendant FPL on December 27, 2005.

68.    Defendant FPL continued the racial discrimination, racial harassment and
       retaliation against Plaintiff Jilani with respect to his compensation, terms,
       conditions, and privileges of employment with Defendant FPL as described
       below.

69.    Defendant FPL and its managers, officers, directors, and lawyers alienated
       Plaintiff Jilani's former coworkers against Plaintiff Jilani by holding
       Defendant FPL lawyer-monitored investigations with Plaintiff Jilani's former
       coworkers and using Defendant FPL's confidentiality clause as a threat of
       discharge from employment to the former coworkers for communicating to
       Plaintiff Jilani the content of such investigations and any ongoing
       employer/employee activity in Defendant FPL's workplace.

70.    Defendant FPL and its managers, officers, directors, and lawyers assigned
       FPL's human resource manager, Christopher Ryan, to control whether
       Plaintiff Jilani is returned to work, the same manager who (A) Defendant
       FPL used to fire Plaintiff Jilani when Defendant FPL knew that Christopher

Ryan knew of Juan Quintana and Alberto Villareal's racial discrimination, racial harassment, and retaliation against Plaintiff Jilani when he fired Plaintiff Jilani, and who (B) Defendant FPL used to continue the racial discrimination, racial harassment, and retaliation that deny Jilani an equal opportunity to progress as a protection & control engineer, as described in Paragraphs below.

71.   Defendant FPL and its managers, officers, directors, and lawyers had Defendant FPL's human resources manager, Christopher Ryan, on May 5, 2006, forward to Plaintiff Jilani Defendant FPL's racially hostile summarization of the events that have taken place since Plaintiff Jilani's termination from employment, a summarization that distorted the truth and, among other things,

A.   Falsely categorized Plaintiff Jilani's response of "No" to a question on his employment application that asked whether he had convictions or pending criminal cases as a failure on Plaintiff Jilani's part to report an arrest, when Plaintiff Jilani was not obligated to report such an arrest on the employment application, and when Defendant FPL and its officers, managers, directors, and lawyers know (1) that Plaintiff Jilani was not required to report such an arrest on his employment application, and (2) that it is illegal for Defendant FPL to require Plaintiff Jilani to report such an arrest on its employment application.

17

B.  Falsely accused Plaintiff Jilani of falsifying his application for employment, but without intent to do so, when Defendant FPL and its officers, managers, directors, and lawyers know that Plaintiff Jilani's application for employment was, in fact, not falsified.

C.  Misrepresented that Defendant FPL investigated the conduct of Alberto Villareal as soon as it was aware of it, when Plaintiff Jilani had reported to Defendant FPL's manager, Juan Quintana, the racial discrimination and racial harassment June 2005 and Defendant FPL ignored it.  Racial harassment and racial discrimination against Plaintiff Jilani began February 9, 2004 and Defendant FPL was responsible for it.

D.  Misrepresented that Defendant FPL investigated the conduct of Alberto Villareal as soon as it was aware of it, when Plaintiff Jilani had reported to Defendant FPL's manager, Juan Quintana, the racial discrimination, racial harassment, and retaliation on November 29, 2005 and Defendant FPL retaliated against Plaintiff Jilani for reporting such by suspending Plaintiff Jilani from employment on December 9, 2005 and terminating his employment with Defendant FPL on December 27, 2005.  Racial harassment and racial discrimination against Plaintiff Jilani began February 9, 2004 and Defendant FPL was responsible for it.

E.  Failed to indicate that Defendant FPL, with the knowledge of Defendant FPL's manager, Juan Quintana,'s racial discrimination, harassment and retaliation against Plaintiff Jilani, left Juan Quintana in the position of

18

protection & control manager at Industrial Service Center where Plaintiff
Jilani was to be returned to work.

F.  Admitted that it was unfair to terminate Plaintiff Jilani at the initiation of
racists without giving Plaintiff Jilani the ability to discuss the termination
with Defendant FPL, but refused to make appropriate amends after
realizing that FPL's pretext for retaliation against Plaintiff Jilani had
failed.

G.  Deliberately misstated Plaintiff Jilani by stating that Plaintiff Jilani was
concerned about what location he was going to be assigned to work from
when he was returned to work, when Plaintiff Jilani was concerned about
having to report to the same protection & control engineering manager
who discriminated against him because of his race and retaliated against
him because of his opposition to racial discrimination and racial
harassment and who Defendant FPL kept at Industrial Service Center
where Plaintiff Jilani was to be returned to work.

H.  Maliciously portrayed Plaintiff Jilani as a stupid, ignorant liar, by stating,
untruthfully, that Plaintiff Jilani, at first lied, and that Defendant FPL's
human resources manager, Christopher Ryan, had to press Plaintiff
Jilani into admitting the arrest for which Plaintiff Jilani chose to attend a
pre-trial invention program to resolve, when public records show the
arrest, and the record of discipline that was used to discharge Plaintiff
Jilani from employment with Defendant FPL clearly states that Plaintiff

Jilani admitted the arrest and chose to attend a pre-trial intervention program (in lieu of subjecting himself to the costs and inconvenience of entering the criminal justice court system).  Plaintiff Jilani was not required to report the arrest on the employment application as indicated in Paragraph 62 above.

I.  Falsely accused Plaintiff Jilani of refusing to return to work without Defendant FPL paying him a large sum of money, when Plaintiff Jilani clearly indicated in his letter dated April 23, 2006 that his return to work was not contingent upon Defendant FPL agreement to pay compensatory damages.  Defendant FPL relied upon the false accusation to further delay and to deny Plaintiff Jilani a return to work at Defendant FPL.

J.  Documented that Defendant FPL is unwilling to make Plaintiff Jilani a bona fide, good faith, unconditional offer of reinstatement to Plaintiff Jilani as a protection & control engineer, an offer that is curative, with the assurance of job security, and with the date that Plaintiff Jilani is to return to work.

72.  The Defendant FPL's discrimination against Plaintiff Jilani was intentional and due to race.

73.  The Defendant FPL's harassment of Plaintiff Jilani was intentional and due to race.

74. The Defendant FPL's discrimination against Plaintiff Jilani by denying him a promotion when he was entitled to be promoted was intentional and due to race.

75. The Defendant FPL's action of retaliation against Plaintiff Jilani because of his opposition to Defendant FPL's racial discrimination by denying him a promotion when he was entitled to be promoted was intentional and due to race.

76. The Defendant FPL's action against Plaintiff Jilani in denying him employment with Defendant FPL was intentional and due to race.

77. The Defendant FPL's termination of Plaintiff Jilani's employment with Defendant FPL because he opposed racial discrimination and racial harassment was intentional and due to race.

78. The Defendant FPL's unlawful acts of racial discrimination, racial harassment, and retaliation because of Plaintiff Jilani's opposition to Defendant FPL's racial discrimination and racial harassment were done with malice and in reckless disregard for the federally protected rights of Plaintiff Jilani.

79. The Defendant FPL's unlawful acts of racial discrimination, racial harassment, and retaliation because of Plaintiff Jilani's opposition to Defendant FPL's racial discrimination and racial harassment were committed with the intention of violating federal laws.

80.   As a direct and proximate result of Defendant FPL's racial discrimination, racial harassment, and retaliation because of Plaintiff Jilani's opposition to Defendant FPL's racial discrimination and racial harassment, Plaintiff Jilani alleges as follows:

    A.  Plaintiff Jilani has suffered and continues to suffer pecuniary damages including but not limited to, unequal pay, loss wages, loss of employment benefits including pension, loss of bonuses, loss of interest on loss wages, loss of overtime pay, and loss of future earnings.

    B.  Plaintiff Jilani has suffered and will continue to suffer out-of-pocket expenses that include, but are not limited to, costs for moving, housing, utilities, transportation, and insurance, in pursuit of future employment.

    C.  Plaintiff Jilani has suffered a career loss and will incur out-of-pocket expenses of tuition, books, fees, transportation, and other expenses associated with a career change in pursuit of future employment.

    D.  Plaintiff Jilani has suffered and continues to suffer nonpecuniary damages including emotional pain, emotional stress, mental anguish, paranoia, insecurity, depression, anxiety, loss of enjoyment of life, anger, inconvenience, and physical sickness therefrom in the form of psoriasis flare-ups, gastrointestinal pain, weight gain, nightmares, loss of sleep, along with other psychological conditions and physiological symptoms.

    E.  Plaintiff Jilani has suffered and continues to suffer emotionally and physically because of the loss of income that is subjecting him to

bankruptcy, credit damage, repossession of vehicles, loss of earning

power, and relocation to a climate not conducive to his health.

F. Plaintiff Jilani was forced to seek medical treatment and he incurred and

will incur medical costs.

G. Plaintiff Jilani was forced to hire an attorney and incur attorneys' fees.

H. Plaintiff Jilani was forced to obtain expert witnesses and incur expert

witnesses' fees.


**WHEREFORE,** Plaintiff Jilani, respectfully requests that:

1. This action be tried before a jury;

2. The court order Defendant FPL to pay Plaintiff Jilani back wages that

include raises, equal pay, benefits, bonuses, and overtime pay he would

have received had Defendant FPL promoted and assigned Plaintiff Jilani

timely to such position and had Defendant FPL not suspended and

discharged Plaintiff Jilani from employment;

3. The court order Defendant FPL to pay Plaintiff Jilani prejudgment interest

on back wages that include raises, benefits, equal pay, bonuses, and

overtime pay he would have received had Defendant FPL promoted and

assigned Plaintiff Jilani timely to such position and had Defendant FPL

not suspended and discharged Plaintiff Jilani from employment;

4. The court order Defendant FPL to pay Plaintiff Jilani front pay in lieu of

reinstatement, that includes overtime pay, equal pay, raises, future

earnings, benefits, and bonuses he would have received had he remained employed at Defendant FPL, in an amount to be determined by a jury;

5.    The court order Defendant FPL to pay Plaintiff Jilani past and future out-of-pocket expenses, benefits, and other pecuniary damages.

6.    The court order Defendant FPL to pay Plaintiff Jilani past and future nonpecuniary damages in an amount determined by a jury;

7.    The court order Defendant FPL to pay Plaintiff Jilani punitive damages in an amount determined by a jury;

8.    The court award Plaintiff Jilani the costs of this action, including expert witnesses' fees, and reasonable attorneys' fees; and

9.    Such other or different relief as may be appropriate under the circumstances of this case.


Dated: June 29, 2006                     Respectfully submitted,
       Miami, Florida

*Norma S. Jilani, Esq.*

Norma S. Jilani, Esquire
Florida Bar No. 0357650
BMS12NSJ@yahoo.com
NORMA A. JILANI, ESQ.
1260 N. W. 88th Street
Miami, Florida 33147
(786) 486-5902
Attorney for Plaintiff, Tariq A. Jilani

24

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

06-21650

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

JILANI, TARIQ A.

**DEFENDANTS**

FPL GROUP, INC.

CIV - HUCK

**(b)** County of Residence of First Listed Plaintiff   MIAMI-DADE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   PALM BEACH
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

NORMA S. JILANI, ESQUIRE
1260 NORTHWEST 88TH STREET
MIAMI, FLORIDA 33147   Tel : 786-486-5902

Attorneys (If Known)

MAGISTRATE JUDGE
SIMONTON

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☑ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):
a) Re-filed Case ☐ YES ☑ NO
b) Related Cases ☐ YES ☐ NO
JUDGE                          DOCKET NUMBER

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
42 USC SEC. 1981- EMPLOYMENT RACIAL DISCRIMINATION, HARASSMENT & RETALIATION

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 25,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
Norma S Jilany Esq
DATE 6/29/2006

FOR OFFICE USE ONLY
AMOUNT               RECEIPT #               IFP